IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| DAVID LEE GARCIA d/b/a<br>AFFORDABLE OVERHEAD DOOR CO.,<br><br>*Plaintiff / Counter-Defendant,*<br><br>v.<br><br>GLOBAL DEVELOPMENT STRATEGIES,<br>INC. and GLOBAL DISTRIBUTION<br>SERVICES, INC.,<br><br>*Defendants / Counter-Plaintiffs.* | §<br>§<br>§<br>§<br>§  Civil Action No.  SA-13-CV-1158-XR<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

**ORDER**

On this date, the Court considered Plaintiff/Counter-Defendant's motion to dismiss Defendants/Counter-Plaintiffs' counterclaims. Docket No. 36.  For the following reasons, the motion is GRANTED IN PART AND DENIED IN PART.

**I. Background**

This case arises out of a trademark dispute between two groups of garage door repair and installation service companies.  Plaintiff/Counter-Defendant David Lee Garcia d/b/a Affordable Overhead Door Company ("Plaintiff") alleges he registered the service mark "Affordable Overhead Door Company" with the United States Patent and Trademark Office on November 30, 2004, and with the Texas Secretary of State on January 18, 2006. Pl.'s First Am. Compl. ¶¶ 26, 27.  Additionally, Plaintiff asserts that he has acquired common law trademark rights in the "Affordable" mark. *Id.* ¶ 28.

Defendants/Counter-Plaintiffs Global Development Strategies, Inc. and Global Distribution Services, Inc. ("Defendants") are affiliated companies which compete with Plaintiff in the San Antonio area.[1] Plaintiff alleges that Defendants violated his trademark rights by placing advertisements in the 2013–2014 San Antonio Yellow Pages and 2014–2015 San Antonio Yellow Book using the names "Affordable Garage Door Services[2]," "Garage Door Ninjas," "GDS," "Overhead Garage Door Repair," and "Discount Garage Door Service." *Id.* ¶¶ 14, 36. Plaintiff asserts that Defendants' uses of these names has caused customer confusion and infringed on Plaintiff's trademark rights in violation of the Lanham Act and in violation of the Texas trademark infringement statute and unfair competition common law. *Id.* ¶¶ 5, 18, 35, 46, 60, 67, 75, 83; *see* 15 U.S.C. §§ 1051 *et seq.*; TEX. BUS. & COM. CODE §§ 16.102 *et seq.*; *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 236 n.7 (5th Cir. 2010) ("A trademark infringement and unfair competition action under Texas common law presents essentially no difference in issues than those under federal trademark infringement actions.") (internal quotation marks omitted).

Defendants answered Plaintiff's complaint and filed eight counterclaims. Docket No. 34. In Count I, Defendants seek declaratory judgment that they have not infringed upon Plaintiff's trademark to "Affordable Overhead Door Company." In Counts II, III, and IV, Defendants seek declaratory judgment that certain names used by Defendants in yellow pages advertising do not infringe upon Plaintiff's trademark rights. (Count II regards the name

---

[1] As the Court noted in its prior Order, Defendants have not explained how the two companies are meaningful separate entities. *See* Docket No. 23, at 11–14.

[2] Plaintiff lists the name as either "Affordable Garage Door Service" or "Affordable Garage Door Services" in his amended complaint. *See, e.g.*, Pl.'s First Am. Compl. ¶¶ 14, 38. The yellow pages photographs he includes in his complaint show an advertisement for "Affordable Garage Door Services." *Id.* at 6, 7. Plaintiff's use of any other name is presumably a typographical error.

"Affordable Garage Door Services;" Count III regards the name "Discount Garage Door Service;" and Count IV regards the name "Overhead Garage Door Repair.")  In Count V, Defendants seek cancellation of Plaintiff's United States trademark to "Affordable Overhead Door Company."  In Count VI, Defendants seek cancellation of Plaintiff's Texas trademark to the same mark.  In Count VII, Defendants seek declaratory judgment that the term "affordable" when used in its ordinary meaning is not protectable.  Finally, In Count VIII, Defendants seeks declaratory judgment that the term "overhead door company" when used in its ordinary meaning is not protectable.

On July 11, 2014, Plaintiff moved to dismiss Defendants' Counts III, IV, V, VI, VII, and VIII pursuant to Federal Rule of Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Docket No. 36.

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim for relief must contain (1) "a short and plain statement of the grounds for the court's jurisdiction;" (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief;" and (3) "a demand for the relief sought."  FED. R. CIV. P. 8(a).  In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed favorably to the plaintiff. *Fernandez-Montez v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993).  To survive a 12(b)(6) motion, a

3

complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### III. Discussion

*A. Defendants' Counts III, IV, VII, and VIII*

In Counts III and IV, Defendants seek declaratory judgment that their uses of the names "Discount Garage Door Service," and "Overhead Garage Door Repair," respectively, do not violate Plaintiff's trademark rights. In Counts VII and VIII, Defendants seek declaratory judgment that the terms "affordable" and "overhead door company," respectively, when used in their ordinary meanings, are not protectable. Plaintiff asserts in his motion to dismiss that Defendants cannot state a claim for declaratory judgment regarding Counts III, IV, VII, and VIII because Defendants' uses of these names and terms is not in controversy.

Article III of the United States Constitution authorizes federal courts to adjudicate only "Cases" or Controversies." U.S. Const. Art. III, § 2, cl. 1; *see MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 120 (2007). "Throughout the litigation, the party seeking relief must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *United States v. Juvenile Male,* — U.S. —, —, 131 S. Ct. 2860, 2864 (2011) (internal quotation marks omitted). If at any point the party seeking relief lacks a personal interest in the outcome of the litigation, the action is moot and must be dismissed. *Genesis Healthcare Corp. v. Symczyk*, — U.S. —, —133 S. Ct. 1523, 1528 (2013).[3]

---

[3] Since Plaintiff's motion regarding Counts III, IV, VII, and VIII challenges whether this Court has Article III jurisdiction to hear the claims, it should have been brought under Rule 12(b)(1). *See* FED. R. CIV. P. 12(b)(1) (allowing a motion to dismiss for lack of subject-matter jurisdiction); *Higgins v. Texas Dept. of Health Services*, 801 F. Supp. 2d 541, 547 (W.D. Tex. 2011) ("A motion to dismiss for lack of Article III standing is properly considered under Rule 12(b)(1).").

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).  The phrase "case of actual controversy" in the Act refers to the type of "Cases" and "Controversies" that are justiciable under Article III. *MedImmune*, 549 U.S. at 127.  As applied to the Declaratory Judgment Act, Article III requires that a dispute be "definite and concrete, touching the legal relations of parties having adverse legal interests." *Id.* (internal quotation marks omitted).  A court may not enter an advisory opinion on a hypothetical set of facts. *Id.*  However, a declaratory judgment claimant need not actually expose himself to liability before bringing suit. *Id.* at 129–30.  "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 127; *see Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009).

At first blush, the existence of an actual controversy regarding Counts III and IV seems obvious in this case.  Plaintiff has sued Defendants for their use of names allegedly infringing on Plaintiff's trademark rights.  Plaintiff's allegations are sweeping and implicate all names used locally by Defendants in garage door repair and installation advertising.  For example, Plaintiff alleges:

> In 2013 Defendants began unfairly competing with Plaintiff by placing advertisements in the San Antonio 2013–2014 Yellow Pages and 2014–2015 Yellow Book using names that cause confusion, mistake and deception with Plaintiff's AFFORDABLE mark and making false and misleading representations and statements.

5

Pl.'s First Am. Compl. ¶ 36. Additionally, Plaintiff demands revenue generated by all phone numbers listed in Defendants' advertisements under any names used. *Id.* ¶ 82; *see* Mot. to Dismiss, at 8. Defendants' Claims III and IV assert rights to use the objectionable names "Discount Garage Door Service," and "Overhead Garage Door Repair," respectively, in advertising. On these allegations, the Court finds an actual controversy between the parties, such that the Court may exercise Article III jurisdiction over Defendants' declaratory judgment Claims III and IV. *See Already, LLC v. Nike, Inc.*, — U.S. —, —, 133 S. Ct. 721, 727 (2013) (finding that a party had standing to assert an invalid trademark counterclaim where the party was sued for violating the trademark); *see EnviroGLAS Products, Inc. v. EnviroGLAS Products, LLC*, 705 F. Supp. 2d 560, 567 (N.D. Tex. 2010) (finding Article III jurisdiction where the plaintiff claimed a disputed right to engage in activity potentially infringing on the defendant's trademark); *cf. Vantage Trailers*, 567 F.3d at 751 ("An unfulfilled threat of action by the patent holder is precisely the type of bullying—warning of legal action but never bringing suit—that the Declaratory Judgment Act sought to prevent.").

Complicating matters, however, is Plaintiff's assertion in his motion to dismiss that Defendants may use the names "Discount Garage Door Service" and "Overhead Garage Door Repair." Mot. to Dismiss, at 8–9. Plaintiff insists that he only objects to Defendants' use of the name "Affordable Garage Door Services." *Id.*[4] Plaintiff explains that all of Defendants' advertisements are linked together with text at the bottom of each stating "Owned and Operated by GDS" and "Under Same Ownership." *Id.* Since Defendants' advertisements using the non-objectionable names ("Discount Garage Door Service" and "Overhead Garage Door Repair") have been linked to advertisements using the objectionable name ("Affordable

---

[4] Defendants claim a right to use this name in Count II, which Plaintiff does not challenge on Article III grounds.

Garage Door Services"), Plaintiff contends that all of Defendants' advertisements are objectionable. If the linking language is removed, Plaintiff states, Defendants may use the names "Discount Garage Door Service" and "Overhead Garage Door Repair" without violating his trademark rights. *Id.*

The Court has review Plaintiff's pleadings. Despite Plaintiff's assertions in his motion to dismiss, the Court cannot find any parallel language in his complaint clarifying which names he finds objectionable. Instead, all of the names used by Defendants are alleged to cause "confusion, mistake and deception" with Plaintiff's purported trademarks. *See* Pl.'s First Am. Compl. ¶ 36. Therefore, as held above, the Court may declare Defendants' rights to use the names. *See Already*, 133 S. Ct. at 727.

Plaintiff's clarifications in his motion to dismiss also have not rendered the controversies moot. *See Genesis Healthcare Corp.*, 133 S. Ct. at 1528 (explaining that an Article III controversy must exist at all stages of the litigation or the action must be dismissed as moot). While Plaintiff may render an Article III controversy moot by voluntary cessation, Plaintiff bears "the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Already*, 133 S. Ct. at 727. Here, Plaintiff's allegedly wrongful behavior is his interference with Defendants' allegedly legitimate, business advertising under the names "Discount Garage Door Service" and "Overhead Garage Door Repair." Plaintiff's two clarifying paragraphs in his motion to dismiss, stating that he does not object to Defendants' uses of the names in isolation, does not meet the heavy burden of establishing voluntary cessation. *Cf. id.* at 728 (holding that a covenant not to sue for purported trademark violations was sufficient to render an Article III

controversy moot where, among other things, the covenant was unconditional, irrevocable, and prohibited the trademark holder from making any claim or demand). Since the pleadings show an actual controversy over whether Defendants may use the names "Discount Garage Door Service" and "Overhead Garage Door Repair," and since Plaintiff has not voluntarily withdrawn his objections to Defendants' uses of the names, the Court finds that it has Article III jurisdiction to consider Defendants' Claims III and IV.

Next, Plaintiff challenges Defendants' Count VII. In Count VII, Defendants seek a declaration that they may freely use the term "affordable" in its ordinary meaning. Plaintiff asserts in his complaint that he "acquired common law trademark rights in [the] AFFORDABLE brand trademark." *See* Pl.'s First Am. Compl. ¶ 28. In light of these competing claims to the term "affordable", the Court finds that it has Article III jurisdiction to consider Defendants' Count VI. *See MedImmune*, 549 U.S. at 127.[5]

Finally, in Count VIII, Defendants seek a declaration that they may freely use the term "overhead door company" in its ordinary meaning. In his motion to dismiss, Plaintiff asserts that he has never contended that the term "overhead door company" is protectable, that he trademarked the term, or that Defendants breached his trademark over this term. Mot. to Dismiss at 10. He further notes that his United States trademark registration for the mark "Affordable Overhead Door Company" includes the disclaimer, "No claim is made to the exclusive right to use 'overhead door company' apart from the mark as shown." *Id.*; U.S.

---

[5] Plaintiff argues that Defendants cannot prevail on their claim because the "affordable" mark is more than merely descriptive and Defendants cannot establish fair use of this mark, *see* Mot. to Dismiss at 9. These arguments go the strength of Defendants' claim, not to whether this Court lacks Article III jurisdiction.

Trademark, Docket 36, Ex. A.[6]  Neither Plaintiff nor Defendants allege that Defendants have used the name "Overhead Door Company" in advertisements.  In light of these undisputed facts, the Court finds that Defendants have not shown that they have suffered, or are threatened with, an actual injury traceable to Plaintiff and likely to be redressed by a favorable judicial decision. *See Juvenile Male,* 131 S. Ct. at 2864 (2011).  Therefore, the Court finds that it lacks Article III jurisdiction over Defendants' Claim VIII.

*B. Count V*

In Count V, Defendants seek cancellation of Plaintiff's "Affordable Overhead Door Company" trademark based on Plaintiff's alleged abandonment of the mark by failure to police third-party use.  In support of their counterclaim, Defendants state that there are at least 325 third-party federal registrations containing the word "Affordable," none of which Plaintiff owns. Defs.' Am. Answer and Countercls. ¶ 21.  Additionally, Defendants allege that more than a dozen third-party garage door businesses use the word "Affordable" in their names. *Id.* ¶ 23.  Defendants allege that Plaintiff has never acted to cancel these third-party registrations or stop the use of these third-party names. *Id.* ¶¶ 22, 24.

The Lanham Act provides grounds for cancelling a mark for abandonment. 15 U.S.C. §§ 1064(3), 1065, 1127.  Among other methods to prove "abandonment" the alleged infringer must show that, "due to acts or omissions of the trademark owner, the incontestable mark has lost 'its significance as a mark.'" *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1079 (5th Cir. 1997) (quoting 15 U.S.C. § 1127).  Typically, this method of abandonment applies

---

[6] Plaintiff attaches a copy of his "Affordable Overhead Door Company" United States trademark registration to his motion to dismiss.  Since Plaintiff's motion challenges this Court's jurisdiction, the Court may consider the exhibit. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (allowing a court to consider matters outside of the pleadings when determining subject-matter jurisdiction).

where a mark becomes a generic term;[7] however, abandonment also applies more broadly where a mark "cease[s] to function as an indicator of origin" or "loses trade significance." *Id.*; *see id.* at 1075 (explaining how in rare cases a trademark owner's failure to exercise appropriate control and supervision over its licensees may result in an abandonment of trademark protection).

"[A] trademark owner's failure to pursue potential infringers does not in and of itself establish that the mark has lost its significance as an indicator of origin." *Id.* at 1080. Only where the mark has lost all significance as an indication of source or sponsorship through widespread unauthorized use will abandonment result. *See* RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 30 cmt. c. (1995); *Fort James Corp. v. Kimberly-Clark Tissue Co.*, No. 98-C-7834, 1999 WL 966144, at *4 (N.D. Ill. Oct. 8, 1999).

While Defendants face a stringent burden of proving their abandonment claim, *see Exxon Corp.*, 109 F.3d at 1075–76, at this stage of proceedings, Defendants have plausibly alleged that Plaintiff's disregard of potentially infringing activity has resulted in his trademark ceasing to function as an indicator of origin and losing trade significance. *See Iqbal*, 556 U.S. at 678; *Exxon Corp.*, 109 F.3d at 1079; *Fort James Corp*, 1999 WL 966144, at *4 (denying a motion to strike the affirmative defense of trademark abandonment where the defendant alleged widespread infringement of the trademarked design). Accordingly, Plaintiff's motion to dismiss Count V is denied.

*C. Count VI*

Finally, Defendants seek to cancel Plaintiff's Texas trademark registration, asserting that the mark "Affordable Overhead Door Company" is merely descriptive and Plaintiff has

---

[7] Plaintiff focus solely on this aspect of abandonment in his motion to dismiss.

where a mark becomes a generic term;[7] however, abandonment also applies more broadly where a mark "cease[s] to function as an indicator of origin" or "loses trade significance." *Id.*; *see id.* at 1075 (explaining how in rare cases a trademark owner's failure to exercise appropriate control and supervision over its licensees may result in an abandonment of trademark protection).

"[A] trademark owner's failure to pursue potential infringers does not in and of itself establish that the mark has lost its significance as an indicator of origin." *Id.* at 1080. Only where the mark has lost all significance as an indication of source or sponsorship through widespread unauthorized use will abandonment result. *See* RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 30 cmt. c. (1995); *Fort James Corp. v. Kimberly-Clark Tissue Co.*, No. 98-C-7834, 1999 WL 966144, at *4 (N.D. Ill. Oct. 8, 1999).

While Defendants face a stringent burden of proving their abandonment claim, *see Exxon Corp.*, 109 F.3d at 1075–76, at this stage of proceedings, Defendants have plausibly alleged that Plaintiff's disregard of potentially infringing activity has resulted in his trademark ceasing to function as an indicator of origin and losing trade significance. *See Iqbal*, 556 U.S. at 678; *Exxon Corp.*, 109 F.3d at 1079; *Fort James Corp*, 1999 WL 966144, at *4 (denying a motion to strike the affirmative defense of trademark abandonment where the defendant alleged widespread infringement of the trademarked design). Accordingly, Plaintiff's motion to dismiss Count V is denied.

*C. Count VI*

Finally, Defendants seek to cancel Plaintiff's Texas trademark registration, asserting that the mark "Affordable Overhead Door Company" is merely descriptive and Plaintiff has

---

[7] Plaintiff focus solely on this aspect of abandonment in his motion to dismiss.

abandoned the mark by failure to police third-party use. Plaintiff moves to dismiss Defendants' counterclaim, arguing that the Texas registration cannot be cancelled if Plaintiff's United States trademark registration is not cancelled.

In Texas, a registered trademark may be cancelled if a court has rendered a final judgment that the trademark has been abandoned or the registration was improperly granted. TEX. BUS. & COMM. CODE § 16.064(a)(4)(A), (C). In Texas, registration is improperly granted if the mark "is merely descriptive or deceptively misdescriptive of the applicant's goods or services." *Id.* § 16.051(a)(5)(A). Additionally, as with the Lanham Act, abandonment result when a trademark loses its significance as a mark. *Id.* § 16.004; *see* 15 U.S.C. § 1127; *Exxon Corp.*, 109 F.3d at 1079. For the reasons discussed above, the Court finds Defendants have stated a plausible claim that Plaintiff abandoned his mark through disregard of trademark infringement. Additionally, the Court finds that Defendants have stated a claim that Plaintiff's Texas trademark for "Affordable Overhead Door Company" is merely descriptive and should be cancelled. *See* TEX. BUS. & COMM. CODE §§ 16.051(a)(5)(A), 16.064(a)(4)(C).

### IV. Conclusion

For the foregoing reasons, Plaintiff's motion to dismiss Defendants' counterclaims (docket no. 36) is GRANTED IN PART AND DENIED IN PART as follows:

- Plaintiff's motion is GRANTED as to Defendants' Count VIII;
- Plaintiff's motion is DENIED as to Defendants' Counts III, IV, V, VI and VII.

It is so ORDERED.

SIGNED this 27th day of August, 2014.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE